## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LATOYA RIPPY** | **: CIVIL ACTION** |
| | : |
| **v.** | **: NO. 19-1839** |
| | : |
| **PHILADELPHIA DEPARTMENT OF** | : |
| **PUBLIC HEALTH,** *et al.* | : |

## <u>MEMORANDUM</u>

**KEARNEY, J.** **September 30, 2019**

An African American female employee working in an alleged joint city/private initiative claiming a supervising federal employee sexually harassed her and her private employer's supervisors then retaliated by adversely changing her job roles after she complained must carefully parse her discrimination and civil rights claims. The city's control over all aspects of the private employer's work staff may allow a finding the city is a joint employer for discrimination remedies. But this joint employer finding does not mean the federal employee, her private employer, or its supervisors become state actors necessary for the employee to proceed on a civil rights claim. While the city is a state actor, the employee must plausibly plead the others became state actors. After parsing the variety of claims, the African American female employee plead the city is a joint employer for her discrimination claims but has not plead a civil rights claim against the city, her private employer and its supervisors or the federal employee who allegedly harassed her. She also may not seek a remedy under section 1981. We grant the city's, the private employer's, and the federal employee's motions to dismiss the civil rights claims with leave to amend if the employee can plead facts allowing her to proceed on a civil rights claim under section 1983.

## I.  Alleged facts

African American Latoya Rippy began working for Public Health Management Corporation in March 2013.[1] The Corporation is "a non-profit health institute that builds healthier communities through partnerships with government, foundations, business and community-based organizations."[2] Corporation employees Cherie Walker-Baban, Leslie Gaymon, and Kristine Arrieta supervised Ms. Rippy.[3]

Ms. Rippy worked for the Corporation with City of Philadelphia employees and supervisors, at a building owned, operated, and managed by the City, but Ms. Rippy does not plead the nature of the partnership or contractual relationship between the City and the Corporation.[4] For unplead reasons, both federal employee Tony Gerard with the Center for Disease Control and her supervisors at the Corporation directly supervised Ms. Rippy' s work, but the City employees "exerted significant control over [Corporation] employees by co-determining matters that govern essential terms and conditions of the employment of [Corporation] employees."[5] City employees defined work rules and assignments for Corporation employees including when Corporation employees should report to City doctors and nurses.[6] City and Corporation supervisors disciplined Corporation employees.[7] Corporation employees reported issues with City employees to City and Corporation supervisors.[8] City employees conducted sexual harassment trainings for Corporation employees, and the City's anti-harassment policies applied to Corporation employees.[9]

### *Federal employee Mr. Gerard's alleged conduct.*

Ms. Rippy also answered to Tony Gerard, an employee with the Center for Disease Control under the federal government.  Mr. Gerard also supervised Ms. Rippy.[10]  From September 2017 through September 2018, Mr. Gerard subjected Ms. Rippy to "physical sexual harassment, verbal sexual harassment, and racial discrimination."[11]  Mr. Gerard began supervising Ms. Rippy in

2

September 2017.[12] Mr. Gerard once asked Ms. Rippy why her boyfriend would lend her his car, implying African Americans "do not give anything away for free."[13] Mr. Gerard also implied Ms. Rippy offered her boyfriend sexual favors in exchange for the car.[14] Mr. Gerard asked if Ms. Rippy's son had an "African last name."[15] When she responded his name is "Matunda," Mr. Gerard said "no wonder you have an African man—they like their women thick."[16] Ms. Rippy told Mr. Gerard the next day his comments were inappropriate and he apologized and said it would not happen again.[17] But in November 2017, during her annual evaluation, Mr. Gerard said, "You can dress like someone out of a magazine and still won't get a promotion."[18] In January 2018, Mr. Gerard put his arms on Ms. Rippy's breast following a sexual harassment training Mr. Gerard did not attend.[19] After placing his arms on her breast, Mr. Gerard claimed the "sexual harassment policy [did] not apply" to him because he did not take the sexual harassment training.[20] In June 2018, Mr. Gerard told Ms. Rippy he could not describe where he thought the cream filling in moon pies came from because he did not "want to receive another text from [her]."[21]

In September 2018, Mr. Gerard implied Ms. Rippy, and African Americans in general, receive goods like her car in exchange for sexual favors.[22] Ms. Rippy immediately reported Mr. Gerard's behavior to Supervisor Gaymon.[23] Supervisor Gaymon told Ms. Rippy she would report Mr. Gerard's behavior to Supervisor Walker-Baban.[24]

### *Corporation's response to Ms. Rippy's concerns.*

On September 17, 2018, Supervisor Gaymon, non-party Melinda Salmon (with an undefined role), and Ms. Rippy discussed Ms. Rippy's concerns about Mr. Gerard's behavior.[25] The same day, Ms. Rippy's supervisors removed her from a special project and moved her reporting facility to accommodate her new placement.[26] Supervisor Walker-Baban and Ms.

3

Salmon told Ms. Rippy to send her allegations to them and leave the premises by noon so Supervisor Walker-Baban and Ms. Salmon could speak with Mr. Gerard.[27]

Following her conversation with Mr. Gerard later the same day, Supervisor Walker-Baban called Ms. Rippy telling her Mr. Gerard agreed to "keep his distance," and directing Ms. Rippy to "keep her distance."[28] Supervisor Walker-Baban also told Ms. Rippy to report to her usual facility rather than the new one.[29] Ms. Rippy said she would not return to a mutual place of work with Mr. Gerard as she "[felt] ashamed, targeted, humiliated and embarrassed."[30] Supervisor Walker-Baban responded Ms. Rippy "ha[d] been in [Mr. Gerard's] presence for months and [] never had an issue before."[31] Ms. Rippy maintained her concern about reporting back to the same facility but Supervisor Walker-Baban told Ms. Rippy she told Mr. Gerard of the issue and she expected Ms. Rippy to return to the mutual facility the following day.[32]

When Supervisor Walker-Baban asked Ms. Rippy about her plans for monthly meetings, Ms. Rippy responded she "would not be returning back to the same office as [Mr. Gerard] until this [situation] has been resolved."[33] When asked to return her pouch to Health Center 1, Ms. Rippy told Supervisor Walker-Baban someone "would drop [Ms. Rippy's] work belongings off by the end of the day. However, it would not be her due to the fact that she [] was extremely uncomfortable going to [Mr. Gerard's] place of employment."[34] Ms. Rippy then gave her belongings to Abby in Health Center 5, asking Abby to give them to her supervisor, Gilberto Lopez.[35] Supervisor Gaymon advised Ms. Rippy to allow the necessary managers handle the situation.[36]

Ms. Rippy spoke to Human Resource representative Donna Hollins on September 18, 2018.[37] HR Representative Hollins told Ms. Rippy "she received [Ms. Rippy's] statement from [Ms. Arrieta]," but Ms. Rippy did not write a statement nor speak with Supervisor Arrieta about

4

Mr. Gerard's harassment.[38] Ms. Rippy asked HR Representative Hollins if she "could write a statement and submit it to [ HR Representative Hollins] for evidence." HR Representative Hollins agreed.[39]

HR Representative Hollins then told Ms. Rippy "under no circumstances was [Ms. Rippy] to return to Health Center 1," but she would "be reporting to Health Center 5 beginning on Wednesday September 19."[40] Supervisor Arrieta confirmed this placement, emailing Ms. Rippy later the same day saying Ms. Rippy would no longer work on the special project and would be stationed at Health Center 5 permanently.[41]

On September 19, 2018, Ms. Rippy returned to work at Health Center 5.[42] Non-party Nashira Alston called Ms. Rippy informing her of an encounter involving Supervisor Walker-Baban, Supervisor Arrieta, and an individual from Human Resources.[43] Ms. Alston said while the Human Resources individual asked her questions about Ms. Rippy and Mr. Gerard's interactions and Ms. Alston's own interactions with Mr. Gerard, Supervisor Arrieta continually interrupted Ms. Alston, calling her a liar and stating, "[Mr. Gerard] never made you feel uncomfortable."[44]

On September 26, 2018, Supervisor Arrieta told Ms. Rippy to "submit all special projects to [Mr. Gerard] for final closure," and "all records are to be placed in [Mr. Gerard's] mailbox at Health Center 1."[45] On October 4, 2018, Supervisor Arrieta again told Ms. Rippy to "keep [her] old work until it is ready for closure then submit it to [Mr. Gerard]."[46]

### *Alleged retaliation for Ms. Rippy's complaints.*

Because Ms. Rippy reported Mr. Gerard's sexual harassment and racial discrimination, other Corporation employees continued to "discriminate, retaliate, and harass" her.[47] Some examples of continued harassment include: being required to report to Mr. Gerard's place of work even though Ms. Rippy reported feeling unsafe around him, being "singled out for selective

5

enforcement and discipline," having her work abilities questioned for the first time, and being scheduled for trainings she used to be exempt from.[48] Around October 9, 2018, Supervisor Arrieta began reviewing Ms. Rippy's cases despite never doing so for other employees previously and scheduled Ms. Rippy to cover a mandatory phlebotomy even though Supervisor Arrieta would usually just ask whether Ms. Rippy felt she needed to be retrained without questioning her answer.[49] Supervisor Arrieta also began reviewing Ms. Rippy's "mileage per client visit" without doing so for other "similarly situated employee[s]," as Supervisor Arrieta previously only reviewed mileage when it "exceeded the expected by ten (10) or more miles."[50]

## II. Analysis

Ms. Rippy sues the City, the Corporation, Mr. Gerard, and Supervisors Gerard, Gaymon Arrieta and Walker-Baban for employment discrimination and retaliation under Title VII and for civil rights violations under 42 U.S.C. §§ 1981, 1983 Even though admittedly employed by the Corporation and supervised by Corporation employees and without specifically alleging conduct by a City employee, Ms. Rippy alleges the City and the Corporation jointly employed her, and both the City and the Corporation discriminated against her based on her gender and race under Title VII.[51] Ms. Rippy also alleges the City and the Corporation violated Title VII by retaliating against her after she reported Mr. Gerard's sexual harassment.[52] She alleges the City, the Corporation, Supervisor Walker-Baban, Supervisor Arrieta, Supervisor Gaymon, and Mr. Gerard discriminated against her based on her race and retaliated against her following her reports of Mr. Gerard's harassment under 42 U.S.C. § 1981,[53] as well as discriminated against her based on her gender and race and retaliated against her following her reports of Mr. Gerard's conduct under 42 U.S.C. § 1983.[54]

6

**A.** **Ms. Rippy pleads employment discrimination, but not civil rights claims against the City.**

**1. Ms. Rippy may proceed against the City on her Title VII claim.**

The Corporation employed Ms. Rippy. She also seeks to impose employer liability under Title VII upon the City as a joint employer. The City moves to dismiss the Title VII claim against it, arguing Ms. Rippy fails to allege facts showing it jointly employed her. [55] We disagree.

Ms. Rippy seeks to impose liability on both the City and the Corporation under Title VII, arguing they jointly employed her and are both responsible for ensuring her freedom from discrimination under Title VII. The Title VII test for determining an employee/employer relationship's extent "has as its touchstone the control over the manner and means of work."[56]

Through Title VII, Congress prohibits employers from discriminating against employees.[57] Ms. Rippy must plausibly plead the City employed her. Our Court of Appeals instructs us to consider "the hiring party's right to control the manner and means by which the product is accomplished."[58] We focus on "which entity paid [the employees'] salaries, hired and fired them, and had control over their daily employment activities."[59] "[A]ll of the incidents of the [employee/employer] relationship must be assessed and weighed with no one factor being decisive."[60] Under this inquiry, "two entities may be 'co-employers' or 'joint employers' of one employee for purposes of Title VII" where both employee/employer relationships satisfy the relevant factors.[61]

Where an employee alleges a company and its managers or supervisors exert substantial control over the affected individual's manner and means of work, particularly within the context of the individual's injury at the hands of the company, the pleadings are sufficient to survive a motion to dismiss.[62] We recognize "contours of the 'employment relationship can only be established by a careful factual inquiry'" yet "allow[] pleadings with a 'thin' factual record to

7

survive a motion to dismiss . . . ."[63] When a plaintiff alleges *some* facts satisfying joint employer theory factors, even where there is a "thin" factual record, we find this pleading survives dismissal.[64]

In *Faush*, an African-American temporary employee and his African-American co-workers paid by a temporary staffing agency alleged the store's manager and additional white employees racially discriminated against them.[65] The temporary employee sued the store for racial discrimination under Title VII even though the staffing agency paid him.[66] The store denied being the temporary employee's "employer," and our Court of Appeals held the employee must "demonstrate the existence of an 'employment relationship' with [the store]" to succeed on the Title VII claim.[67] The temporary employee presented evidence demonstrating the store managers directly supervised him, controlled his work schedules and tasks, and instructed him on the details of his work.[68] The store also exclusively provided the temporary employees with site-specific training and its employees "exercised control over the temporary employees' daily work activities."[69] The factors the temporary employee presented establishing the store's control over him and other temporary employees outweighed the fact a temporary employment agency paid and dispatched the temporary employees; held temporary employee records, taxes, and social security; and, maintained workers' compensation insurance on the temporary employees' behalf.[70] Because the store possessed substantial control over the temporary employees based on its involvement in the employees' work schedules, assignments, and training, our Court of Appeals found the temporary employees established the store may be liable as a joint employer under a summary judgment standard.[71]

Ms. Rippy alleges facts showing the City as her joint employer. She alleges City employees exerted significant control over her as an employee by co-determining matters governing essential

8

terms and conditions of her employment, including promulgating work rules and assignments and tasking Corporation employees with certain duties. Ms. Rippy reported to City doctors and nurses, and City employees decided when Corporation employees, including Ms. Rippy, were to do so.

Ms. Rippy also alleges City supervisors and Corporation supervisors jointly shared the employee discipline commission. She describes how Corporation employees must report issues with City employees to both the City supervisors and the Corporation supervisors. She alleges City employees *exclusively* provided all sexual harassment policies, guidelines, and trainings for Corporation employees. Ms. Rippy concedes the Corporation paid her rather than the City, like the temporary staffing agency paying the temporary store employees in *Faush*. But *Faush* and similar cases confirm the sole factor of paying the employee is not dispositive of an established employee/employer relationship.[72] No one factor in the employee/employer relationship analysis is decisive, and all aspects of the relationship must be assessed and weighed as a whole.[73] The *Faush* constellation of *Darden* factors is very similar to those plead by Ms. Rippy. Where Ms. Rippy pleads facts of the City's substantial control over her work schedule, daily assignments, and harassment training, those factors outweigh the allegation the Corporation paid her.

Ms. Rippy alleges facts to proceed into discovery on the joint employment issue. She alleges the City has the authority to control her daily employment activities. Such activities include City employees dictating when Ms. Rippy shall report to City doctors and nurses and tasking Ms. Rippy with assignments involving City doctors and nurses. Ms. Rippy alleges the City maintained exclusive control over sexual harassment policies, guidelines, and trainings for Public Health Management Corporation employees. Although Ms. Rippy concedes the City did not pay her, this one factor does not diminish the plead facts of the City's control over her as an employee.[74]

Ms. Rippy sufficiently alleges a plausible joint employment claim against the City under Title VII.

### 2. Ms. Rippy does not plead *Monell* civil rights claims against the City.

The City moves to dismiss Ms. Rippy's section 1983 claims against it for discrimination and retaliation as she fails to plead its direct involvement and claims for supervisory liability must be dismissed when she fails to plead a City policy or custom as the moving force behind the constitutional violations under *Monell v. Department of Social Services of the City of New York.* We agree.

The Supreme Court in *Monell* held a "municipality may be held liable under 42 U.S.C. § 1983 for a constitutional injury [] directly result[ing] from a municipality's policy, custom, or practice."[75] "To establish municipal liability under 42 U.S.C. § 1983, a civil rights plaintiff must demonstrate [] the municipality itself, throughout the implementation of a policy or a custom, caused the underlying constitutional violation."[76] "A municipality is not liable under [s]ection 1983 unless the policy or custom was the 'moving force' underlying the constitutional violation."[77] The Court in *Monell* requires a civil rights plaintiff "plead[] the existence of: 1) a policy or lack thereof; 2) a policy maker that effectuated said policy; and 3) a constitutional violation whose "moving force" was the policy in question."[78] "Under *Monell*, a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees."[79]

Ms. Rippy does not plead a City custom or policy, or "a link between the challenged restriction and a municipal decisionmaker."[80] Ms. Rippy alleges the City provided sexual harassment and discrimination policies and guidelines for the Corporation.[81] She alleges City employees conducted sexual harassment and discrimination trainings for Corporation employees.[82] She concedes the City provided sexual harassment and discrimination policies,

10

guidelines, and training for the Corporation's employees. She pleads Mr. Gerard chose not to attend the training by failing to register.[83] Ms. Rippy does not allege facts supporting an inference the City is the "final decision-maker," or the City "'either deliberately chose not to pursue . . . alternatives' known to prevent the constitutional violations, 'or acquiesced in a long-standing policy or custom of inaction in this regard.'"[84] Rather she alleges only Mr. Gerard individually considered himself exempt from the sexual harassment training and touched her inappropriately in the presence of three witnesses.[85] Ms. Rippy fails to allege those witnesses have supervisory powers and allowed Mr. Gerard to act contrary to the established policy. She fails to plead the City proceeded with willful blindness as to Mr. Gerard's ignorance of its policies, or supervisors knew Mr. Gerard did not attend the trainings and considered himself exempt from the policies, yet allowed him to continue such behavior despite this knowledge. Ms. Rippy does not plead a custom of the City or its supervisory employees turning a blind eye to individuals violating its established policies.

Ms. Rippy does not plead the City acted deliberately indifferent or acquiesced in a custom of inaction.[86] She agrees the City implemented protections against sexual harassment and discrimination for Corporation employees. Because she does not identify a municipal official with the power to make policy who could potentially be responsible for a violative custom or policy, the City cannot be held liable for the violative actions of one employee failing to follow established policy. We dismiss Ms. Rippy's section 1983 claims for discrimination and retaliation against the City without prejudice.

### 3. Ms. Rippy cannot plead section 1981 claims against the City.

The City argues Ms. Rippy may not sue it under 42 U.S.C. § 1981, as 42 U.S.C. § 1983 provides the sole remedy against state actors. We agree.

11

"[A] private cause of action cannot be asserted against a municipal [actor] for a violation of [section] 1981."[87] Our Court of Appeals explained "the express cause of action for damages created by [section] 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in [section] 1981 by state governmental units."[88]

Ms. Rippy sues the City under section 1981 for damages alleging race, sex, and gender discrimination. Her exclusive remedy for damages against the City is under section 1983. We dismiss Ms. Rippy's section 1981 claims against the City with prejudice.

## B. Ms. Rippy does not plead civil rights claims against the Corporation or its employees.

While not presently challenging the Title VII discrimination and retaliation claims against them, the Corporation, Supervisor Walker-Baban, Supervisor Gaymon, and Supervisor Arrieta argue Ms. Rippy did not plead they are state actors who acted under color of state law. They move to dismiss Ms. Rippy's civil rights claims against them. We agree Ms. Rippy has not plead a civil rights claim against these private actors.

"A civil rights action brought [under] section 1983 is sustainable against state actors only."[89] A private party may be subject to suit under section 1983 when "the alleged infringement of federal rights [is] 'fairly attributable to the State.'"[90] "In deciding whether there has been state action, the court must remain focused on the central purpose of the state action inquiry—to 'assure that constitutional standards are invoked when "it can be said that the state is *responsible* for the specific conduct of which plaintiff complains.""'[91]

We use four tests to determine whether a private party is "fairly said to be a state actor"[92]:

(1) Where there is a sufficiently close nexus between the state and the challenged action of the private entity so that the action of the latter may fairly be treated as that of the state itself (the "close nexus test"); (2) Where the state has placed itself in a position of interdependence with a private party such that it must be recognized as a joint participant in the challenged activity (the "symbiotic relationship test"); (3) Where a private party is a

12

willful participant in joint action with the state or its agents (the "joint action test"); and (4) Where the private party has been delegated a power traditionally exclusively reserved to the state (the "public function test").[93]

It is not sufficient under this analysis to conclude joint employment establishes state action under the joint action test where one of the joint employers is a state actor.[94]    In *Borrell v. Bloomsburg University*, a private hospital and public university jointly employed a nurse anesthetist as director of their Nurse Anesthetist Program.[95] The jointly employed director dismissed a student working for the private hospital through the public university's clinical program for refusing to submit to a drug test.[96] The student sued under section 1983 against the director, the private hospital, and the public university "for, among other things, violation of her due process right[s] . . . ."[97] Our Third Circuit instructed joint employment "do[es] not 'end the inquiry' on the state actor question," rather we must determine whether the state "exercised control over the particular conduct [giving] rise to the plaintiff's alleged constitutional deprivation."[98] In *Borrell*, an agreement between the private hospital and the public university showed the private hospital "retained the authority to unilaterally 'exclude a Student from participation in the Clinical Training' if the student [does not] comply with [the hospital's] policy."[99] Despite a public university employee signing off on the termination letter and the joint employment relationship between the private hospital and public university, no alleged facts supported the conclusion the public university had control over the student's dismissal.[100] Although the private hospital and public university had a close relationship and jointly employed the director responsible for the challenged action, the public university and the challenged private dismissal did not have such a close nexus to find the private hospital a state actor under section 1983.[101]

Nor is it enough to plead state regulation over private activity to fulfill the symbiotic relationship test, as it does not "render the actions of an institution to be those of a state, even if the regulation is pervasive, extensive, and detailed."[102] Under the close nexus test, the infringement of federal rights must be "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by . . . a person for whom the State is responsible."[103] Where "the authority of state officials . . . [is] wholly unnecessary to effectuate" the actions causing the violation, there is not "such a close nexus between the State and *the challenged action* that seemingly private behavior may be fairly treated as that of the state itself."[104] "The requirements of the public function test are 'rigorous' and 'rarely . . . satisfied.'"[105]

Because the state action inquiry begins with assuring the state is responsible for the violations plaintiff complains of and follows with "assur[ing] [] constitutional standards are invoked" to address those violations,[106] Ms. Rippy must plead the *City's responsibility* for the discrimination and retaliation against her. Ms. Rippy does not allege the City's responsibility or its connection to the Corporation employees' discrimination or retaliation against her as required under the state actor test. Because Ms. Rippy alleges no facts suggesting the City's responsibility or connection to the violations of which she complains, we cannot reach a plausible inference the Corporation acted as a state actor in relation to the City's plead involvement.

We cannot conclude the Corporation is a state actor solely because Ms. Rippy plausibly plead the City and the Corporation jointly employed her.[107] She includes no fact allegations suggesting the Corporation's work involved performing traditional and exclusive government functions.[108] Apart from pleading joint employer, Ms. Rippy only alleges the Corporation's sexual harassment and discrimination policies are provided by the City as a state actor. These allegations do not demonstrate a plausible inference the Corporation or its employees exercised some right or

privilege created by the City or by a rule of conduct imposed by the City as a state actor constituting state action on the Corporation's and its employees' part. Ms. Rippy fails to plead her alleged federal right infringement stems from the Corporation and its employees' actions as fairly attributable to the State. She fails to plead the City has responsibility or connection to her discrimination and retaliation by Corporation employees. As a result, Ms. Rippy's section 1983 claims against the Corporation and its employees as state actors are not sustainable and must be dismissed without prejudice.

### C. Ms. Rippy does not plead civil rights claims against federal agent Mr. Gerard under *Bivens*.

Mr. Gerard argues Ms. Rippy has not plead his liability under section 1983 as federal agents and employees are immune from suit under section 1983, and Ms. Rippy's attempt to circumvent this immunity by alleging the Corporation employees and Mr. Gerard "acted in concert and joint action with each other"[109] is unfounded. We agree, but for a different reason.

### 1. Ms. Rippy has not plead facts under section 1983 for violations by a federal agent acting under federal law.

Mr. Gerard argues Ms. Rippy may not sue him under section 1983 as federal agents and employees are immune from suit under section 1983. "Because section 1983 provides a remedy for violations of federal law by persons acting pursuant to state law, federal agencies and officers are facially exempt from section 1983 liability inasmuch as in the normal course of events they act pursuant to federal law."[110] But proper avenues exist to remedy where federal officers violate constitutional rights while acting under color of federal law.[111]

Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, a plaintiff may state an actionable claim against federal agents acting unconstitutionally under federal law when the plaintiff pleads: "(1) a deprivation of a right secured by the Constitution and laws of the

United States; and (2) [] the deprivation of the right was caused by an official acting under color of federal law."[112] The Supreme Court in *Bivens* "created a federal tort counterpart to the remedy created by 42 U.S.C. § 1983 as it applies to federal officers."[113] But the Court also "repeatedly refuse[s] to recognize *Bivens* actions in any new contexts,"[114] only implying a right of action under the Fourth Amendment,[115] the Fifth Amendment's due process clause,[116] and the Eighth Amendment's prohibition against cruel and unusual punishment.[117]

Ms. Rippy premises her claims for constitutional violations against Mr. Gerard on the Fourteenth and First Amendments. Because the Fourteenth Amendment solely applies to the states rather than federal actors, this is not an appropriate venue for Ms. Rippy.[118] The Supreme Court and our Court of Appeals also strictly limit extending *Bivens* to First Amendment contexts.[119] Even if Ms. Rippy does have a valid claim for constitutional violations against Mr. Gerard, she may not proceed under section 1983 for her claims under the Fourteenth and First Amendments, as Mr. Gerard is a federal employee and facially exempt from section 1983 liability. We dismiss Ms. Rippy's section 1983 claims against Mr. Gerard with leave to amend her Complaint to possibly plead civil rights liability against Mr. Gerard relating to his discrimination and retaliation against her.

### 2. Ms. Rippy fails to plead Mr. Gerard acted jointly or in concert with Corporation employees.

Mr. Gerard argues Ms. Rippy cannot circumvent the immunity from civil rights claims against state actors through conclusory allegations the Corporation employees and Mr. Gerard "acted in concert and joint action with each other."[120] We agree.

The Supreme Court in *Bell Atlantic Corp. v. Twombly* directed "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[121] To survive a Rule

12(b)(6) motion to dismiss, a plaintiff must plead factual allegations "rais[ing] a right to relief above the speculative level."[122] "Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such agreement can be inferred."[123]

Ms. Rippy does not plead facts allowing an inference Mr. Gerard acted in concert and joint action with Corporation employees in discriminating or retaliating against her. Instead Ms. Rippy concludes "defendants acted in concert and joint action with each other" without providing allegations supporting such concert and joint action between the individuals.[124] She fails to plead facts. Without alleging an agreement or making averments supporting concerted action, Ms. Rippy's allegations are insufficient to allege an agreement or concerted action between Mr. Gerard and the Corporation employees and her claim cannot survive Mr. Gerard's motion to dismiss.[125] We dismiss Ms. Rippy's section 1983 claim against Mr. Gerard for his alleged "concert and joint action" with Corporation employees regarding their retaliation and discrimination against Ms. Rippy for failure to plausibly plead concerted action without prejudice. As she has not had an opportunity to more specifically plead, we grant her leave to timely amend should she find a basis under Rule 11 to assert Mr. Gerard's civil rights liability.

### 3. Ms. Rippy cannot plead section 1981 claims against Mr. Gerard.

Mr. Gerard argues Ms. Rippy may not sue him under 42 U.S.C. § 1981 as 42 U.S.C. § 1983 provides the sole remedy against state actors. We agree.

"[A] private cause of action cannot be asserted against a municipal [actor] for a violation of § 1981."[126] Specifically, 42 U.S.C. § 1981 solely applies to *non-municipal* actors, as "[t]he rights protected by this section are protected against impairment by *nongovernmental*

*discrimination and impairment* under color of State law."[127] Our Court of Appeals explained "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units."[128]

Ms. Rippy sues Mr. Gerard under section 1981 for damages alleging race, sex, and gender discrimination. Ms. Rippy admits Mr. Gerard is a governmental actor as he works for the Center for Disease Control. The Center for Disease Control "is an arm of the Public Health Service of the United States Department of Health and Human Services."[129] Because Mr. Gerard is a government actor, Ms. Rippy's exclusive remedy for damages against him is under section 1983.[130] We dismiss Ms. Rippy's section 1981 claims against Mr. Gerard with prejudice.

## III. Conclusion

Ms. Rippy sufficiently alleges facts to state a plausible joint employment claim against the City under Title VII. We dismiss Ms. Rippy's civil rights claims against the City for discrimination and retaliation under section 1983 for failure to plead municipal liability without prejudice. We also dismiss Ms. Rippy's section 1983 claims against the Corporation and its employees as Ms. Rippy fails to plead the Corporation's status as a "state actor." Because section 1983 provides the sole remedy against state actors for discrimination, we dismiss Ms. Rippy's section 1981 claims against the City and Mr. Gerard with prejudice. We dismiss Ms. Rippy's section 1983 claims against Mr. Gerard with leave to amend her Complaint regarding Mr. Gerard's liability for violating her constitutional rights, as section 1983 is not the proper avenue for constitutional violations under the Fourteenth and First Amendments by federal employees acting under federal law and Ms. Rippy failed to plead concert of action between Mr. Gerard and Corporation employees.

---

[1] ECF Doc. No. 26 at ¶ 16.

18

[2] *Id.* at ¶ 17.

[3] *Id.* at ¶¶ 20–25.

[4] *Id.* at ¶ 31.

[5] *Id.* at ¶ 33.

[6] *Id.* at ¶ 34.

[7] *Id.* at ¶ 35.

[8] *Id.* at ¶ 36.

[9] *Id.* at ¶ 37.

[10] *Id.* at ¶¶ 18–19.

[11] *Id.* at ¶ 39.

[12] *Id.* at ¶ 40.

[13] *Id.* at ¶¶ 42–43.

[14] *Id.* at ¶ 45.

[15] *Id.* at ¶ 48.

[16] *Id.* at ¶¶ 49–50.

[17] *Id.* at ¶¶ 51–53.

[18] *Id.* at ¶¶ 56–58.

[19] *Id.* at ¶¶ 61, 65.

[20] *Id.* at ¶ 68.

[21] *Id.* at ¶¶ 75-77.

[22] *Id.* at ¶¶ 83–85.

[23] *Id.* at ¶ 86.

[24] *Id.* at ¶ 89.

[25] *Id.* at ¶¶ 96–98.

[26] *Id.* at ¶¶ 99–100.

[27] *Id.* at ¶¶ 101–02.

[28] *Id.* at ¶¶ 103–04.

[29] *Id.* at ¶ 105.

[30] *Id.* at ¶ 106.

[31] *Id.* at ¶ 107.

[32] *Id.* at ¶ 108.

[33] *Id.* at ¶¶ 110–11.

[34] *Id.* at ¶¶ 111, 113–14.

[35] *Id.* at ¶¶ 115–16.

[36] *Id.* at ¶ 112.

[37] *Id.* at ¶ 117.

[38] *Id.* at ¶¶ 118–19.

[39] *Id.* at ¶¶ 120–21.

[40] *Id.* at ¶ 122.

[41] *Id.* at ¶ 123.

[42] *Id.* at ¶ 124.

[43] *Id.* at ¶ 125.

[44] *Id.* at ¶¶ 126–28.

[45] *Id.* at ¶ 131.

[46] *Id.* at ¶ 132.

[47] *Id.* at ¶ 133.

[48] *Id.* at ¶ 134.

[49] *Id.* at ¶¶ 135–38.

[50] *Id.* at ¶¶ 139–41.

[51] *Id.* at ¶¶ 155, 159.

[52] *Id.* at ¶¶ 160–62.

[53] *Id.* at ¶¶ 177, 180.

[54] *Id.* at ¶¶ 181–208.

[55] When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[56] *Ward v. Cottman Transmission Systems, LLC*, No. 18-2155, 2019 WL 643605, at *5 (D.N.J. Feb. 14, 2019).

[57] Title VII protects federal employees ". . . in executive agencies . . . from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a) (2014).

[58] *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 214 (3d Cir. 2015) (quoting *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 323 (1992)). The non-exhaustive list of relevant *Darden* factors include: "[T]he skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party." *Darden*,

503 U.S. at 323–24 (quoting *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 739–40 (1989)).

[59] *Faush*, 808 F.3d at 214 (quoting *Covington v. International Association of Approved Basketball Officials*, 710 F.3d 114, 119 (3d Cir. 2013)).

[60] *Darden*, 503 U.S. at 324 (quoting *N.L.R.B. v. United Insurance Co. of America*, 390 U.S. 254, 258 (1968)).

[61] *Faush*, 808 F.3d at 214; *see Graves v. Lowery*, 117 F.3d 723, 727 (3d Cir. 1997).

[62] *See Wadley v. Kiddie Academy International, Inc.*, No. 17-5745, 2018 WL 3035785, at *3 (E.D. Pa. June 19, 2018) ("*Thompson v. U.S. Airways, Inc.*, 717 F. Supp. 2d 468 (E.D. Pa. 2010) (allegations [] employees worked on the premises owned by the alleged joint employer and [] the employer controlled decisions relating to compensation were sufficient to survive the motion to dismiss stage); *Myers v. Garfield & Johnson Enterprises, Inc.*, 679 F. Supp. 2d 598 (E.D. Pa. 2010) (allegations [] the employee was covered by sexual harassment policies promulgated by the joint employer and [] the employer required termination of employees under certain circumstances and participated in daily supervision were sufficient to survive the motion to dismiss stage); *Harris v. Midas*, No. 17-95, 2017 WL 5177668, at *2 (W.D. Pa. Nov. 8, 2017) (allegations [] the employee was subject to the joint employer's workplace policies, and [] the employer provided training and guidance to its franchisees and conducted site inspections were sufficient to survive motion to dismiss)").

[63] *Wadley*, 2018 WL 3035785, at *3.

[64] *But see Wadley*, 2018 WL 3035785, at *3 (granting defendant's motion to dismiss joint employer theory of liability argument and allowing plaintiff ability to amend complaint where plaintiff did "not allege a *single* fact from which the Court [could] infer that any of the joint or single employer theory factors are present") (emphasis added).

[65] *Faush*, 808 F.3d at 210.

[66] *Id.*

[67] *Faush*, 808 F.3d at 212 (quoting *Covington*, 710 F.3d at 119).

[68] *Faush*, 808 F.3d at 218.

[69] *Id.* at 216–17.

[70] *Id.* at 215.

[71] *Id.* at 218. Although the court in *Faush* dealt with a motion for summary judgment rather than a motion to dismiss, the same *Darden* factor test is used at both stages to determine joint employer status. *See, e.g.*, *Ward*, 2019 WL 643605, at *5 (finding joint employment plausibly pleaded under

Title VII based on the *Darden* factors where employer controlled employee work schedules, how employees completed work, and hiring decisions).

[72] *See Faush*, 808 F.3d at 218; *see, e.g.*, *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344 (3d Cir. 1991) (finding an employment relationship where the company delegated control over the injured employee and the company's inspector directed the employee at the time of the accident, regardless of another company paying and dispatching the employee); *Linstead v. Chesapeake & Ohio Railway Co.*, 276 U.S. 28 (1928) (finding an employment relationship where an employee acted as a company's trainmaster, even though another company paid the employee's wages and controlled employee discharge and suspension). Again noting these are summary judgment cases, but acknowledging the same *Darden* factors are assessed at both stages of the inquiry.

[73] *Darden*, 503 U.S. at 324 (quoting *N.L.R.B.*, 390 U.S. at 258).

[74] *See Myers v. Garfield & Johnson Enterprises*, 679 F. Supp. 2d 598, 610 (E.D. Pa. 2010) (explaining a franchise agreement "disclaim[ing] any responsibility on [the company's] part to train franchise employees and stat[ing] that [another company] has exclusive authority over hiring and personnel decisions is a factor weighing against plaintiff's 'joint employment' claim, but is not a decisive one, *especially* at the pleadings stage.") (emphasis added).

[75] *Hunter v. Prisbe*, 984 F. Supp. 2d 345, 353 (M.D. Pa. 2013) (citing *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 695 (1978)).

[76] *Stevens v. Borough*, No. 11-7216, 2013 WL 2292047, at *2 (E.D. Pa. May 23, 2013) (quoting *Monell*, 436 U.S. at 690–91).

[77] *Stevens*, 2013 WL 2292047, at *3 (quoting *Kelly v. Borough of Carlisle*, 622 F.3d 248, 263 (3d Cir. 2010)).

[78] *Stevens*, 2013 WL 2292047, at *3 (quoting *Monell*, 436 U.S. at 694).

[79] *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007).

[80] *McTernan v. City of York, Pennsylvania*, 564 F.3d 636, 659 (3d Cir. 2009).

[81] ECF Doc. No. 26 at ¶ 37.

[82] *Id.*

[83] *Id.* at ¶ 61.

[84] *Edwards v. Northampton County*, No. 12-5323, 2016 WL 7654661, at *7 (E.D. Pa. 2016) (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996)).

[85] ECF Doc. No. 26 at ¶¶ 65–70 ("Ms. Alston, Dorthoy Baptiste, and Desare Bradham all witnessed this incident.").

[86] *See McTernan v. City of York, Pennsylvania*, 564 F.3d 636, 658–59 (3d Cir. 2009) ("To satisfy the pleading standard, [plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was.").

[87] *Gelpi v. City of Philadelphia*, 183 F. Supp. 3d 684, 690 (E.D. Pa. 2016) (quoting *Lande v. City of Bethlehem*, 457 F. App'x 188, 193 (3d Cir. 2012)).

[88] *McGovern v. City of Philadelphia*, 554 F.3d 114, 121 (3d Cir. 2009) (quoting *Jett v. Dallas Independent School District*, 491 U.S. 701, 733 (1989)).

[89] *Boyd v. Pearson*, 346 F.App'x 814, 816 (3d Cir. 2009) (citing *Bright v. Westmoreland County*, 380 F.3d 729, 736 (3d Cir. 2004)).

[90] *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 642 (E.D. Pa. 2014).

[91] *Schutt v. Melmark*, 186 F. Supp. 3d 366, 373 (E.D. Pa. 2016) (quoting *Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288, 295 (2001)) (emphasis in original).

[92] *Pugh v. Downs*, 641 F. Supp. 2d 468, 472 (E.D. Pa. 2009).

[93] *Foster v. City of Philadelphia*, No. 12-5851, 2013 WL 12149717, at *1 n.1 (E.D. Pa. Apr. 9, 2013) (quoting *Pugh*, 641 F. Supp. 2d at 472) (internal citations and quotation marks omitted).

[94] *Borrell v. Bloomsburg University*, 870 F.3d 154, 160 (3d Cir. 2017) ("[J]oint employment . . . do[es] not 'end the inquiry' on the state actor question.").

[95] *Id.* at 157.

[96] *Id.* at 157–58.

[97] *Id.* at 159.

[98] *Id.* at 160–61 (quoting *Kach v. Hose*, 589 F.3d 626, 649 (3d Cir. 2009)).

[99] *Id.* at 161.

[100] *Id.* at 161–62; *see Glunk v. Noone*, 186 F. Supp. 3d 453, 460 (E.D. Pa. 2016) ("The necessary 'close nexus' exists where the state exercises coercive power or provides 'such significant encouragement, either overt or covert,' deeming the conduct state action.") (citation omitted).

[101] *Id.* at 162; *see Kach*, 589 F.3d at 649 ("Action taken by private entities with the *mere approval or acquiescence* of the State is not state action.").

[102] *Brogan v. La Salle University*, 70 F. Supp. 2d 556, 568 (E.D. Pa. 1999) (citing *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350, 358–59 (1974)).

[103] *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982).

[104] *Borrell*, 870 F.3d at 161 (3d Cir. 2017) (quoting *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005)) (emphasis added by source).

[105] *Schutt v. Melmark*, 186 F. Supp. 3d 366, 373 (E.D. Pa. 2016) (quoting *Robert S. v. Stetson School, Inc.*, 256 F.3d 159, 165 (3d Cir. 2001)).

[106] *Schutt*, 186 F. Supp. 3d at 373.

[107] *See Borrell*, 870 F.3d at 160–61; *Brogan*, 70 F. Supp. 2d at 568.

[108] *See Schutt*, 186 F. Supp. 3d at 373 (dismissing plaintiff's state action allegations where "Complaint . . . [did not] contain any supporting factual allegations to suggest providing custody and care services to intellectually disabled citizens is a traditional and exclusive government function in Pennsylvania or New Jersey.").

[109] ECF Doc. No. 26 at ¶¶ 191, 202.

[110] *Hindes v. Federal Deposit Insurance Corp.*, 137 F.3d 148, 158 (3d Cir. 1998).

[111] *See generally Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (providing a remedy for plaintiff where federal agents acting under federal law violated plaintiff's constitutional rights under the Fourth Amendment); *Donlow v. Garfield Park Academy*, No. 09-6248, 2010 WL 1630595, at *4–5 (D.N.J. 2010) (explaining the circumstances under which each test is applied and how to meet each test).

[112] *Torruella-Torres v. FCI Fort Dix*, 218 F. Supp. 3d 270, 272 n.1 (D. Del. 2016).

[113] *Id.*

[114] *Vanderklok v. United States*, 868 F.3d 189, 198 (3d Cir. 2017).

[115] *Bivens*, 403 U.S. at 389.

[116] *David v. Passman*, 442 U.S. 228, 248–49 (1979).

[117] *Carlson v. Green*, 446 U.S. 14, 17–18 (1980).

[118] *Cf. Pugh v. Internal Revenue Service*, 472 F. Supp. 350, (E.D. Pa. 1979) (considering whether *pro se* plaintiff stated a due process or equal protection claim under the Fifth Amendment which would apply to the actions of federal officers since the Fourteenth Amendment applies only to the

states and cannot be the premise for due process and equal protection claims against federal officers).

[119] *See, e.g.*, *Reichle v. Howards*, 556 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims"); *Watlington on behalf of FCI Schuylkill African American Inmates v. Reigel*, 723 F. App'x 137, 140 n.3 ("[A] . . . First Amendment retaliation claim pursuant to 42 U.S.C. § 1983 . . . may not apply to a *Bivens* claim against a federal official.").

[120] ECF Doc. No. 26 at ¶¶ 191, 202.

[121] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Papasan v. Allain*, 478 U.S. 265, 286 (1986) (courts "are not bound to accept as true a legal conclusion couched as a factual allegation" on a motion to dismiss).

[122] *Twombly*, 550 U.S. at 555.

[123] *Thomas v. U.S. Airways*, No. 13-6121, 2014 WL 1910245, at *3 (E.D. Pa. May 13, 2014) (quoting *Flanagan v. Shively*, 783 F. Supp. 922, 928 (M.D. Pa. 1992)).

[124] ECF Doc. No. 26 ¶¶ 191, 202.

[125] *See, e.g.*, *Strategic Environmental Partners, LLC v. Bucco*, 184 F. Supp. 3d 108, 132–33 (D.N.J. 2016) (dismissing plaintiff's section 1983 conspiracy claim under Rule 12(b)(6) where plaintiffs alleged "[e]ach [d]efendant, in concert and conspiracy with the other [d]efendants, intentionally violated the civil rights of the [p]laintiffs," as "simply alleging 'agreement' without facts from which that agreement can be inferred is insufficient.") (quoting *Martinez v. New Jersey*, No. 11-2223, 2012 WL 2116407, at *6 (D.N.J. June 11, 2012)); *Thomas v. U.S. Airways*, No. 13-6121, 2014 WL 1910245, at *3 (E.D. Pa. May 13, 2014) ("Merely pleading that U.S. Airways employees 'made statements that they knew to be false and about [plaintiff] . . . between themselves, to Philadelphia Police Officers, and to other presently unknown persons,' is insufficient to allege an agreement or concerted action between parties and cannot permit plaintiff's claim to survive defendants' motion.") (internal citation omitted); *Rodriguez v. Widener University*, No. 13-1336, 2013 WL 3009736, at *4 (E.D. Pa. June 17, 2013) (finding plaintiff failed to plausibly plead the conspiracy element of his section 1983 claim where "there [was] nothing . . . in the [c]omplaint from which a conspiratorial agreement or concerted action [could] be inferred to plausibly plead a constitutional conspiracy.").

[126] *Gelpi v. City of Philadelphia*, 183 F. Supp. 3d 684, 690 (E.D. Pa. 2016) (quoting *Lande v. City of Bethlehem*, 457 F. App'x 188, 193 (3d Cir. 2012)).

[127] 42 U.S.C. § 1981(c) (2017) (emphasis added).

[128] *McGovern v. City of Philadelphia*, 554 F.3d 114, 121 (3d Cir. 2009) (quoting *Jett v. Dallas Independent School District*, 491 U.S. 701, 733 (1989)).

[129] *Mazur v. Merck & Co.*, 964 F.2d 1348, 1350 n.1 (3d Cir. 1992) (defining Center for Disease Control).

[130] *Rose v. Department of Labor & Industry, Equal Opportunity Office*, No. 19-2483, 2019 WL 3413835, at *2 (E.D. Pa. July 29, 2019) (denying section 1981 claim where plaintiff alleged defendants were "'State Workers' who 'represent and work for the Department of Labor and Industry'" because plaintiff conceded defendants' identities as state actors, making section 1983 her exclusive remedy).