# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LATOYA RIPPY,** | : | |
| | : | Case No.  19-cv-1839-JMY |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| **PUBLIC HEALTH MANAGEMENT** | : | |
| **CORPORATION, ET AL.,** | : | |
| | : | |
| *Defendants* | : | |

## MEMORANDUM

**YOUNGE, J.**                                                 **FEBRUARY 19, 2020**

Before the Court are three Motions to Dismiss filed separately by Defendants Tony Gerard ("Gerard") (ECF No. 47); City of Philadelphia ("City") (ECF No. 48); and Public Health Management Corporation ("PHMC"), Cherie Walker-Baban, Kristine Arrieta, and Leslie Gaymon (collectively, "PHMC Defendants") (ECF No. 42).  The Court finds these matters appropriate for resolution without oral argument.  *See* Fed. R. Civ. P. 78; L.R. 7.1(f).  For the reasons set forth below, Gerard's Motion will be granted, the City's Motion will be granted, and the PHMC Defendants' Motion will be granted in part and denied in part.  Plaintiff will be given leave to file an amended complaint as to those claims dismissed *without prejudice*.

## I.     BACKGROUND

### A.  Facts

Unless otherwise noted, the following facts are taken from the operative complaint, Plaintiff's Third Amended Complaint ("TAC," ECF No. 41).[1]  For the purposes of the instant

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

motions, the Court takes as true all factual allegations contained in the TAC.  *See Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005) (noting that a court is "required to accept as true all allegations in the complaint" when deciding a Rule 12(b)(6) motion).

Plaintiff Latoya Rippy, an African American, began working for PHMC in March 2013. (TAC ¶ 19.)  PHMC is "a non-profit health institute that builds healthier communities through partnerships with government, foundations, business and community-based organizations." (*Id*. ¶ 20.)  Rippy asserts that PHMC employees Cherie Walker-Baban, Leslie Gaymon, and Kristine Arrieta "held supervisory authority over" her.  (*Id*. ¶¶ 23-28.)

Rippy worked for PHMC with City employees and supervisors, at a building owned, operated, and managed by the City.  (*Id*. ¶ 34.)  Rippy's supervisors at PHMC directly supervised Rippy's work, but the City employees "exerted significant control over PHMC employees by co-determining matters that govern essential terms and conditions of the employment of PHMC employees."  (*Id*. ¶ 36.)  City employees defined work rules and assignments for PHMC employees, including when PHMC employees should report to City doctors and nurses.  (*Id*. ¶ 37.)  City and PHMC supervisors disciplined PHMC employees.  (*Id*. ¶ 38.)  PHMC employees reported issues with City employees to City and PHMC supervisors. (*Id*. ¶ 39.)  City employees conducted sexual harassment trainings for PHMC employees, and the City's anti-harassment policies applied to PHMC employees.  (*Id*. ¶ 40.)  According to Rippy, employees of the City "implemented the policies and procedures regarding who was required to attend the . . . trainings[,]" and more specifically, "implemented the policy that [f]ederal [g]overnment employees were not required to attend" the trainings.  (*Id*. ¶¶ 41-42.)

Rippy also answered to Tony Gerard, an employee with the Centers for Disease Control and Prevention ("CDC"), a federal government agency.  (*Id*. ¶ 21.)  Gerard also "held

supervisory authority over" Rippy. (*Id*. ¶¶ 21-22.) From September 2017 through September 2018, Gerard subjected Rippy to "physical sexual harassment, verbal sexual harassment, and racial discrimination." (*Id*. ¶ 44.) In September 2017, Gerard informed Rippy that he needed to supervise her in the field. (*Id*. ¶ 45.) Gerard once asked Rippy why her boyfriend would lend her his car, implying African Americans "do not give anything away for free." (*Id*. ¶ 47-48.) Gerard also implied that Rippy offered her boyfriend sexual favors in exchange for the car. (*Id*. ¶ 50.) Gerard asked if Rippy's son had an "African last name." (*Id*. ¶ 53.) When she responded his name is "Matunda," Gerard said "no wonder you have an African man—they like their women thick." (*Id*. ¶¶ 54-55.) Rippy told Gerard the next day his comments were inappropriate, and he apologized and said it would not happen again. (*Id*. ¶¶ 56-58.) But in November 2017, during her annual evaluation, Gerard said: "You can dress like someone out of a magazine and still won't get a promotion." (*Id*. ¶¶ 61-63.) In January 2018, Gerard put his arms on Rippy's breast following a sexual harassment training that Gerard did not attend. (*Id*. ¶¶ 66, 72.) After placing his arms on her breast, Gerard claimed the "sexual harassment policy [did] not apply" to him because he did not take the sexual harassment training. (*Id*. ¶ 75.) In June 2018, Gerard told Rippy he could not describe where he thought the cream filling in moon pies came from because he did not "want to receive another text from [her]." (*Id*. ¶¶ 82-84.)

In September 2018, Gerard implied that Rippy, and African Americans in general, receive goods like her car in exchange for sexual favors. (*Id*. ¶¶ 90-92.) Rippy reported Gerard's behavior to Supervisor Gaymon the next day. (*Id*. ¶ 93.) Supervisor Gaymon told Rippy she would report Gerard's behavior to Supervisor Walker-Baban. (*Id*. ¶ 96.)

On September 17, 2018, Supervisor Gaymon, non-party Melinda Salmon, and Rippy discussed Rippy's concerns about Gerard's behavior. (*Id*. ¶¶ 103-105.) The same day, Rippy's

supervisors removed her from a special project and moved her reporting facility to accommodate her new placement. (*Id.* ¶¶ 106-107.) Supervisor Walker-Baban and Salmon told Rippy to send her allegations to them and leave the premises by noon so Supervisor Walker-Baban and Salmon could speak with Gerard. (*Id.* ¶¶ 108-109.)

Following her conversation with Gerard later the same day, Supervisor Walker-Baban called Rippy, telling her Gerard agreed to "keep his distance," and directed Rippy to "keep her distance." (*Id.* ¶¶ 110-111.) Supervisor Walker-Baban also told Rippy to report to her usual facility rather than the new one. (*Id.* ¶ 12.) Rippy said she would not return to a mutual place of work with Gerard as she "[felt] ashamed, targeted, humiliated and embarrassed." (*Id.* ¶ 113.) Supervisor Walker-Baban responded that Rippy "ha[d] been in [Gerard's] presence for months and [] never had an issue before." (*Id.* ¶ 114.) Rippy maintained her concern about reporting back to the same facility, but Supervisor Walker-Baban told Rippy she had discussed the issue with Gerard and she expected Rippy to return to the mutual facility the following day. (*Id.* ¶ 115.)

When Supervisor Walker-Baban asked Rippy about her plans for monthly meetings, Rippy responded she "would not be returning back to the same office as [Gerard] until this [situation] has been resolved." (*Id.* ¶¶ 117-118.) When asked to return her pouch to Health Center 1, Rippy told Supervisor Walker-Baban someone "would drop [Rippy's] work belongings off by the end of the day. However, it would not be her due to the fact that she [] was extremely uncomfortable going to [Gerard's] place of employment." (*Id.* ¶¶ 118, 120-121.) Rippy then gave her belongings to her co-worker in Health Center 5, asking her co-worker to give them to her supervisor. (*Id.* ¶¶ 122-123.) Supervisor Gaymon advised Rippy to allow the necessary managers to handle the situation. (*Id.* ¶ 119.)

Rippy spoke to Human Resource representative Donna Hollins on September 18, 2018. (*Id*. ¶ 124.) Hollins told Rippy "she received [Rippy's] statement from [Supervisor Arrieta]," but Rippy did not write a statement nor speak with Supervisor Arrieta about Gerard's harassment. (*Id*. ¶¶ 125-126.) Rippy asked Hollins if she "could write a statement and submit it to Hollins for evidence." (*Id*. ¶ 127.) Hollins agreed. (*Id*. ¶ 128.)

Hollins then told Rippy "under no circumstances was [Rippy] to return to Health Center 1," but she would "be reporting to Health Center 5 beginning on Wednesday September 19." (*Id*. ¶ 129.) Supervisor Arrieta confirmed this placement, emailing Rippy later the same day saying Rippy would no longer work on the special project and would be stationed at Health Center 5 permanently. (*Id*. ¶ 130.)

On September 19, 2018, Rippy returned to work at Health Center 5. (*Id*. ¶ 131.) Non-party Nashira Alston called Rippy, informing her of an encounter involving Supervisor Walker-Baban, Supervisor Arrieta, and an individual from Human Resources. (*Id*. ¶ 132.) Alston said that while the Human Resources individual asked her questions about Rippy and Gerard's interactions and Alston's own interactions with Gerard, Supervisor Arrieta continually interrupted Alston, calling her a liar and stating, "[Gerard] never made you feel uncomfortable." (*Id*. ¶¶ 133-135.)

On September 26, 2018, Supervisor Arrieta told Rippy to "submit all special projects to [Gerard] for final closure," and "all records are to be placed in [Gerard's] mailbox at Health Center 1." (*Id*. ¶ 138.) On October 4, 2018, Supervisor Arrieta again told Rippy to "keep [her] old work until it is ready for closure then submit it to [Gerard]." (*Id*. ¶ 139.)

Because Rippy reported Gerard's sexual harassment and racial discrimination, other PHMC employees allegedly continued to "discriminate, retaliate, and harass" her. (*Id*. ¶ 140.)

Some examples of continued harassment include: being required to report to Gerard's place of work even though Rippy reported feeling unsafe around him, being "singled out for selective enforcement and discipline," having her work abilities questioned for the first time, and being scheduled for trainings she used to be exempt from. (*Id.* ¶ 141.) Around October 9, 2018, Supervisor Arrieta began reviewing Rippy's cases despite never having done so for other employees previously. (*Id.* ¶ 142.) She also scheduled Rippy for a mandatory phlebotomy training even though Supervisor Arrieta would usually just ask whether Rippy felt she needed to be retrained without questioning her answer. (*Id.* ¶¶ 143-145.) Supervisor Arrieta also began reviewing Rippy's "mileage per client visit" without doing so for other "similarly situated employee[s]," as Supervisor Arrieta previously only reviewed mileage when it "exceeded the expected by ten (10) or more miles." (*Id.* ¶¶ 146-148.)

### B. Procedural History

On October 9, 2018, Rippy filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and completed a Pre-Charge Inquiry Form, in which she alleges sexual harassment and retaliation. (*See* TAC ¶ 6; ECF No. 50 at 22-26.) On February 7, 2019, the EEOC issued a Notice of Dismissal and Right to Sue Letter. (*See* TAC ¶ 11; ECF No. 42-3 at 2.)[2]

---

[2] Generally, in ruling on a motion to dismiss, a district court "may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, the Court may properly consider EEOC filings in the context of a motion to dismiss for failure to exhaust administrative remedies without converting the motion into one for summary judgment. *See Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000) ("[W]e may consider the EEOC charge and related EEOC documents, including the letter from the EEOC summarizing its investigation, the right to sue letter, and the intake questionnaire, either as undisputed documents referenced in the complaint or central to the plaintiff's claim, or as information which is a matter of public record, without converting this motion to one for summary judgement.") *aff'd*, 276 F.3d 579 (3d Cir. 2001); *Ruddy v. U.S. Postal Serv.*, 455 F. App'x 279, 283 (3d Cir. 2011) (finding that the district court properly relied upon EEOC file attached by defendants in considering motion to dismiss). Here, both Rippy and PHMC Defendants attach as exhibits the Charge of Discrimination, Pre-Charge Inquiry Form, and Right to Sue Letter to their respective briefs. (*See* ECF Nos. 42, 50.) Thus, the Court will consider

Rippy filed this action against Defendants on April 29, 2019. (ECF No. 1.) On September 5, 2019, Defendants filed their first substantive round of motions to dismiss, in response to Rippy's Second Amended Complaint (ECF No. 26). (*See generally* ECF Nos. 28, 29, 30.)[3] On September 30, 2019, the Court granted in part and denied in part these motions. (*See* ECF No. 38.) Specifically, the Court dismissed *with prejudice*: Rippy's 42 U.S.C. § 1981 claim asserted against the City and Gerard. (ECF No. 39 ¶¶ 1(c), 3(a).) The Court dismissed *without prejudice*: Rippy's 42 U.S.C. § 1983 claims for discrimination and retaliation against the City under *Monell*, and Rippy's 42 U.S.C. § 1983 claims against PHMC Defendants. (*Id.* ¶¶ 1(b), 2.) The Court also granted Rippy leave to file a third amended complaint to plead Gerard's potential liability under *Bivens* or a concert of action theory. (*Id.* ¶ 3(b).)[4] On October 10, 2019, Rippy filed her TAC, which now asserts fourteen claims for relief:

| | |
|---|---|
| **COUNT I**: | Gender Discrimination under Title VII, against Defendants City and PHMC; |
| **COUNT II**: | Race Discrimination under Title VII, against Defendants City and PHMC; |
| **COUNT III**: | Hostile Work Environment under Title VII, against PHMC; |
| **COUNT IV**: | Retaliation under Title VII, against Defendants City and PHMC; |

---

these three documents in resolving the instant motions because these documents form the basis of many of Rippy's claims.

[3] The Court observes that Rippy previously filed two amended complaints, the first as a matter of course under Federal Rule of Civil Procedure 15(a)(1) (*see* ECF No. 14), and the second in response to pending motions to dismiss filed by Defendants (*see* ECF No. 22 (citing Rule 15(a)(2))).

[4] Bivens is "the short-hand name given to causes of action against federal officials for alleged constitutional violations." *Bistrian v. Levi*, 912 F.3d 79, 88 (3d Cir. 2018) (citing *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)); *see also Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) (discussing history of Bivens actions and the limited contexts in which such actions are cognizable).

| **COUNT V**: | Discrimination under Pennsylvania Human Relations Act ("PHRA") § 955, against all Defendants;[5] |
|---|---|
| **COUNT VI**: | Aiding and Abetting under PHRA § 955(e), against individual Defendants; |
| **COUNT VII**: | Retaliation under PHRA § 955(d), against all Defendants; |
| **COUNT VIII**: | Discrimination under Philadelphia Fair Practices Ordinance ("PFPO") § 9-1103(1), against all Defendants; |
| **COUNT IX**: | Aiding and Abetting under PFPO § 9-1103(1)(h), against individual Defendants; |
| **COUNT X**: | Retaliation under PFPO § 9-1103(1)(g), against all Defendants; |
| **COUNT XI**: | Race Discrimination under 42 U.S.C. § 1981, against Defendants PHMC, Gaymon, Arrieta, and Walker-Baban; |
| **COUNT XII**: | Retaliation under 42 U.S.C. § 1981, against Defendants PHMC, Gaymon, Arrieta, and Walker-Baban; |
| **COUNT XIII**: | Discrimination under 42 U.S.C. § 1983, against Defendant City; |
| **COUNT XIV**: | Retaliation under 42 U.S.C. § 1983, against Defendant City. |

(TAC ¶¶ 159-242.) Rippy seeks emotional distress damages, back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs of suit, and such other relief as the Court deems proper. (*Id*. at 33.)

On October 24, 2019 and November 7, 2019, Defendants filed their respective second round motions to dismiss in response to Rippy's TAC. (*See* ECF Nos. 42, 47, 48.) Rippy opposed these motions on November 21, 2019. (*See* ECF Nos. 49, 50, 51.) Defendants replied on November 26, 2019 and November 27, 2019. (*See* ECF Nos. 52, 53.)

---

[5] Rippy voluntarily dismisses Count V to the extent it is asserted against Gerard (*see* ECF No. 51 at 11), Walker-Baban, Arrieta, and Gaymon (*see* ECF No. 50 at 13). Accordingly, the Court will not address the arguments raised as to this claim.

## II.    LEGAL STANDARD

Defendants move to dismiss Rippy's claims under Federal Rule of Civil Procedure 12(b)(1), based on Eleventh Amendment immunity, and Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.  (*See generally* ECF Nos. 42, 47, 48.)

Federal Rule of Civil Procedure 12(b)(1) permits the Court to dismiss a proceeding for lack of subject-matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  This includes cases where Eleventh Amendment immunity bars the plaintiff's claims, as the Third Circuit Court of Appeals has noted that "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction."  *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984)).  "An actual determination must be made whether subject matter jurisdiction exists before a court may turn to the merits of a case."  *Tagayun v. Lever & Stolzenberg*, 239 F. App'x 708, 710 (3d Cir. 2007).

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  After *Iqbal*, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  *Id*. at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).  Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  *Id*. (quoting *Iqbal*, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Iqbal*, 556 U.S. at 678).

Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "[the district court] must tak[e] note of the elements [the] plaintiff must plead to state a claim;" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

When a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Third Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486 (3d Cir. 1990). However, a court need not grant leave to amend when it would be an exercise in futility. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, *i.e.*, if the proposed complaint could not 'withstand a renewed motion to dismiss.'") (quoting *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434 (recognizing that denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile).

## III.    DISCUSSION

Some of the arguments raised by Defendants, both individually and jointly, pertain to Rippy's claims against particular Defendants themselves, and other arguments pertain to the claims generally.  Thus, the Court will address the arguments in this manner.

### A.  Arguments Raised Pertaining to Individual Defendants

#### 1. *Defendant Gerard*

Rippy asserts multiple claims against Gerard under the PHRA and PFPO.  (*See* TAC ¶¶ 192-211, Counts V-X.)  Gerard contends that Rippy's PHRA and PFPO claims must be dismissed for lack of subject matter jurisdiction because Gerard is an employee of the CDC—a federal agency, which may not be sued without its consent, "and there has been none."  (ECF No. 47 at 6.)  The Court agrees with Gerard.

"Absent a waiver, sovereign immunity shields the [f]ederal [g]overnment and its agencies from suit."  *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  In the context of employment discrimination, the United States Supreme Court has held that Title VII "is the exclusive, preemptive administrative and judicial scheme for the redress of federal employment discrimination."  *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 829 (1976); *see also Reiser v. New Jersey Air Nat. Guard*, 152 F. App'x 235, 239 (3d Cir. 2005).[6]  "Thus, any claim against federal defendants based on the PHRA [and PFPO] must be dismissed for lack of subject matter

---

[6] Title VII, the PHRA, and the PFPO are so similar that employment discrimination under any one of them is generally presumed to constitute employment discrimination under the other two as well. *See Joseph v. Cont'l Airlines, Inc.*, 126 F. Supp. 2d 373, 376 n.3 (E.D. Pa. 2000) (noting that the analysis of a discrimination claim under Title VII applies with equal force to claims under the PFPO resting on the same facts); *Weston v. Pa.*, 251 F.3d 420, 425 n.3 (3d Cir. 2001) ("the proper analysis under Title VII and the [PHRA] is identical, as Pennsylvania courts have construed the protection of the two acts interchangeably."), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 55 (2006); *see also Richards v. Foulke Assocs., Inc.*, 151 F. Supp. 2d 610, 614 (E.D. Pa. 2001) (discussing the similarity between the PHRA and the PFPO).

jurisdiction because the federal government has not waived sovereign immunity with respect to state anti-discrimination laws." *Welker v. Perdue*, No. 17-230, 2018 WL 1305639, at *3 (W.D. Pa. Mar. 13, 2018) (dismissing PHRA claim against federal defendant on sovereign immunity grounds (internal quotation marks and citations omitted)); *see also Wilson v. MVM, Inc.*, No. 3-4514, 2004 WL 765103, at *12 (E.D. Pa. April 1, 2004) (any claim by private employees "against the federal defendants based on the PHRA must be dismissed for lack of subject matter jurisdiction because the federal government has not waived sovereign immunity" (citing *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999))).

Accordingly, the Court will dismiss *with prejudice* Rippy's PHRA and PFPO claims to the extent they are asserted against Gerard.[7]

### 2. *Defendant Gaymon*

Rippy asserts multiple claims against Gaymon under the PHRA and PFPO, as well as 42 U.S.C. § 1981. (*See* TAC ¶¶ 192-217, Counts V-XII.) Gaymon contends that Rippy's PHRA and PFPO claims must be dismissed to the extent they are asserted against her because "a review of Plaintiff's EEOC Charge reveals [Gaymon] was not named anywhere in the Charge or in

---

[7] Rippy argues that this conclusion ignores her "individual capacity claims," and that "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." (ECF No. 51 at 5 (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).) The Court interprets this argument as Rippy's attempt to revive a civil rights claim against federal agent Gerard under *Bivens*. (*See id*. at 6 (citing *Bivens*, 403 U.S. 388).) However, as clearly noted in the Court's prior Order, under *Bivens* a plaintiff may state an actionable claim against federal agents acting unconstitutionally under federal law *only* when the plaintiff pleads: "(1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) [] the deprivation of the right was caused by an official acting under color of federal law." *Torruella-Torres v. FCI Fort Dix*, 218 F. Supp. 3d 270, 272 n.1 (D. Del. 2016). Moreover, the Supreme Court has "repeatedly refused to recognize *Bivens* actions in any new contexts," only implying a right of action under the Fourth Amendment, the Fifth Amendment's due process clause, and the Eighth Amendment's prohibition against cruel and unusual punishment. *Vanderklok v. United States*, 868 F.3d 189, 198 (3d Cir. 2017); *Bivens*, 403 U.S. at 389; *Davis v. Passman*, 442 U.S. 228, 248-49 (1979); *Carlson v. Green*, 446 U.S. 14, 17-18 (1980). Accordingly, the Court refuses to recognize Rippy's civil rights claims to the extent they are premised on the PHRA and PFPO, because a violation of a state statute is not actionable under *Bivens*.

Plaintiff's Pre-Charge Inquiry Form."  (ECF No. 42-1 at 12.)  Gaymon maintains that claims under the PHRA and PFPO must first be administratively exhausted, and "if a plaintiff does not name a defendant in the administrative charge, she is precluded from later bringing an action against that defendant in court."  (*Id.*)  In response, Rippy argues that she should be excused from the administrative exhaustion requirement because she filed her Charge of Discrimination "on her own without the assistance of counsel."  (ECF No. 50 at 7-8.)  The Court agrees with Gaymon.

Before "filing suit under the PHRA [or PFPO], a plaintiff must first exhaust all administrative remedies by filing a charge of discrimination with the Pennsylvania Human Relations Commission [("PHRC")] or EEOC."  *Hills v. Borough of Colwyn*, 978 F. Supp. 2d 469, 478 (E.D. Pa. 2013) (requiring exhaustion as to PHRA claim); *Richards*, 151 F. Supp. 2d at 616 (interpreting the PFPO to require pre-suit administrative exhaustion); *see also Rizzotto v. Quad Learning, Inc.*, No. 18-4630, 2019 WL 2766588, at *3 (E.D. Pa. June 28, 2019) (requiring PFPO claims to be submitted to the PHRC).  The charge of discrimination "must name the individual(s) alleged to have violated the PHRA."  *Kunsak v. Wetzel*, No. 15-1648, 2016 WL 6601574, at *5 (W.D. Pa. Nov. 7, 2016) (citing 43 Pa. Cons. Stat. Ann. § 959(a)); *see also Pedro v. City Fitness, LLC*, No. 15-4964, 2018 WL 1566798, at *10 (E.D. Pa. Mar. 30, 2018) (dismissing individual defendants who were not named in the charge).  Noncompliance with this requirement will generally bar a later action against an individual who was not named in the charge.  *See Kunsak*, 2016 WL 6601574, at *5.  "The purpose of requiring a defendant to be named in the EEOC or PHRA claim is to give that defendant notice of the allegations against it such that the party has an opportunity to resolve the situation without resort to further litigation."  *McLaughlin v. Rose Tree Media Sch. Dist.*, 1 F. Supp. 2d 476, 482 (E.D. Pa. 1998).

Nevertheless, the Third Circuit has recognized an "exception when the unnamed party received notice and when there is a shared commonality of interest with the named party." *Schafer v. Bd. of Educ.*, 903 F.2d 243, 252 (3d Cir. 1990) (citing *Glus v. G.C. Murphy Co.*, 629 F.2d 248, 251 (3d Cir. 1980)). Lastly, the administrative exhaustion requirement applies to both *pro se* and counseled litigants alike. *See Webb v. City of Phila.*, 562 F.3d 256, 262-63 (3d Cir. 2009) (noting that although charges filed by *pro se* litigants are "to be interpreted in a non-technical fashion, the aggrieved party is not permitted to bypass the administrative process") (internal quotation marks and citation omitted).

The Court finds that Rippy has failed to exhaust her administrative remedies as to Gaymon. First, it is undisputed that Rippy failed to specifically name Gaymon in her Charge of Discrimination (*see* ECF No. 50 at 22) and Pre-Charge Inquiry Form (*see id*. at 23-26). In her TAC, Rippy asserts that Gaymon held supervisory authority over her, much in the same way that she asserts Walker-Baban and Arrieta held supervisory authority over her. *See* TAC ¶¶ 24-28. Thus, Rippy was aware of Gaymon's role at the time she filed her Charge of Discrimination and, in the Court's view, Rippy could easily have named Gaymon in the body of her Charge in the same way she identifies Walker-Baban and Arrieta. (*See* ECF No. 50 at 22-25.) Second, there is no indication in the TAC that PHMC gave Gaymon any indication that Rippy had filed a Charge of Discrimination or that Gaymon could be implicated in the proceedings. The TAC also alleges no facts suggesting that there is a sufficient commonality of interest between Gaymon and PHMC, such that it would be unnecessary to name Gaymon individually as a respondent in the Charge of Discrimination.

Thus, after consideration of the *Glus* exception, the Court finds that it is appropriate to dismiss *with prejudice* Rippy's PHRA and PFPO claims to the extent they are asserted against Gaymon.

### B. Arguments Raised Pertaining to the Claims Themselves

#### 1. *Counts II, V, VI, VI, VIII, and IX*

The PHMC Defendants contend that "Counts II, V, VI, VIII, and IX of the [TAC] must be dismissed to the extent they are predicated upon race discrimination because [Rippy's] EEOC charge makes no claims of race discrimination." (ECF No. 42-1 at 14.) Rippy responds that while "[i]t is undisputed that Plaintiff did not check the box on her EEOC charge alleging race discrimination . . . Plaintiff's EEOC Charge [nonetheless] encompasses her race claim." (ECF No. 50 at 10-11.) Rippy also argues that the PHMC Defendants' arguments "raise questions of fact which can only be determined during the course of discovery." (*Id.* at 11.) The Court agrees with the PHMC Defendants that Rippy failed to exhaust her administrative remedies with regard to her claims alleging race discrimination.

As noted above, "[a]s a precondition to bringing suit under Title VII and the PHRA, a plaintiff must exhaust a claim by presenting it in an administrative charge to the EEOC and the [PHRC]." *Weems v. Kehe Food Distrib., Inc.*, 804 F. Supp. 2d 339, 341 (E.D. Pa. 2011); *see also Richards*, 151 F. Supp. 2d at 616 (applying administrative exhaustion requirement to PFPO claim). However, a plaintiff's failure to check a box on an EEOC charge form does not automatically preclude a plaintiff from pursuing these claims in a subsequent civil lawsuit. *See Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 414 (3d Cir. 2010) (holding that a plaintiff will not be barred from asserting a claim in a subsequent suit "for the mere failure to check a box on an EEOC Charge Form"); s*ee also Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 967 (3d Cir. 1978).

Rather, the relevant test is whether the acts alleged in the subsequent suit are fairly within the scope of the prior EEOC charge, or the investigation arising therefrom. *See Antol v. Perry,* 82 F.3d 1291, 1295 (3d Cir. 1996); *see also Anjelino v. New York Times Co*., 200 F.3d 73, 94 (3d Cir. 1999) (allowing plaintiffs to pursue claims not formally alleged in the charge so long as the claims are reasonably related to the facts contained in the charge). The purpose behind this liberal construction is to avoid punishing plaintiffs for unreasonable or less than thorough EEOC investigations. *See Hicks*, 572 F.2d at 966.

Here, Rippy's Charge of Discrimination (*see* ECF No. 50 at 22) and Pre-Charge Inquiry Form (*see id*. at 23-26) contain no indication that she wished to pursue a race discrimination claim. Not only was the relevant box not checked (*see* ECF No. 50 at 22), but the body of the Charge only discusses alleged acts of sexual harassment and retaliation. In other words, Rippy did not make any specific allegations as to race or use the word "race" in the body of the Charge such that it would suggest she suffered race discrimination. Moreover, the Pre-Charge Inquiry Form also avers no facts supporting a claim of race discrimination. (*See* ECF No. 50 at 23-26.) Therefore, the Court finds that Rippy's formal Charge of Discrimination against PHMC Defendants was devoid of any allegations from which one could discern that race discrimination had been charged. It follows that Rippy has failed to exhaust her administrative remedies. *See Hewitt v. BS Transp. of Ill., LLC*, 355 F. Supp. 3d 227, 235 (E.D. Pa. 2019) (dismissing retaliation claim for failure to exhaust administrative remedies where plaintiff's charge averred no facts supporting a claim of retaliation); *see also Fisher v. Catholic Soc. Servs. of Archdiocese of Phila*., No. 18-4653, 2019 WL 3731688, at *4 (E.D. Pa. Aug. 8, 2019) (dismissing national origin claim "because Plaintiff failed to exhaust her administrative remedies when she neither

checked the box, nor raised 'national origin' as a type of alleged discrimination in her EEOC charge.").

Accordingly, the Court will dismiss *without prejudice* Counts II, V, VI, VIII, and IX to the extent they are predicated upon race discrimination. Rippy may refile these claims after exhausting her administrative remedies provided that such exhaustion is not time-barred.

### 2. *Count III*

The PHMC Defendants also move to dismiss Rippy's hostile work environment claim (*see* TAC ¶¶ 167-188, Count III) on administrative exhaustion grounds. (*See* ECF No. 42-1 at 17.) The PHMC Defendants contend that "[i]nterpreting [Rippy's] EEOC charge liberally, her hostile work environment claim was not asserted within the scope of the charge." (*Id*.) Rippy disagrees, arguing that "the language of [her] EEOC Charge gives rise to a hostile work environment claim." (ECF No. 50 at 13.) The Court agrees with Rippy.

As noted *supra*, where a plaintiff attempts to assert a claim at the district court level which was not raised in the charge of discrimination, the claim is considered exhausted if it is "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Antol*, 82 F.3d at 1295. A reasonable EEOC investigation "should include claims not specifically mentioned in the EEOC charge 'where there was a close nexus between the facts supporting the claims raised in the charge and those in the complaint.'" *Morales v. PNC Bank, N.A.*, No. 10-1368, 2011 WL 3425644, at *4 (E.D. Pa. Aug. 4, 2011) (dismissing plaintiff's religious discrimination claim because it was not fairly within the scope of her EEOC charge or the investigation arising therefrom (quoting *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984))). Where the requisite nexus exists, "the court may reasonably expect an awareness on the part of the defendant that such allegations are likely." *Schouten v. CSX*

*Transp., Inc.*, 58 F. Supp. 2d 614, 616-17 (E.D. Pa. 1999) (stating that "if the allegations made in the complaint filed in this [c]ourt could be reasonably expected to grow out of those contained in the EEOC charge, the pleading of the plaintiff will withstand a motion to dismiss") (internal quotation marks and citation omitted).

In *Schouten*, the plaintiff brought a lawsuit for national origin discrimination and retaliation. *Id.* at 615. Considering exhaustion as to the national origin claim, the *Schouten* court remarked that although the plaintiff did not check the "national origin" box, such a claim could be reasonably expected to grow out of the allegations claiming race discrimination. *Id.* at 616-17. The plaintiff in *Schouten* expressly stated in his charge of discrimination that: "On April 10, 1998, Don and Sam indicated that I had an accent and would not be a good conductor." *Id.* at 617. The court found that "though not an explicit allegation of discrimination based on national origin itself, this statement should have led [defendant] to believe that such a claim was possible." *Id.*

Similarly, in the present case, the Court finds that Rippy's hostile work environment claim falls within the scope of her Charge of Discrimination as such a claim could be "reasonably expected to grow out of" the allegations of sexual harassment. (*See* ECF No. 50 at 22); *see also Schouten*, 58 F. Supp. 2d at 616. The body of her Charge indicates that she "fil[ed] a sexual harassment complaint[,]" and was then "asked by [Supervisor] Walker-Baban to return to work [at] the same location of my abuser" and "placed on calendar to attend [a] meeting within [the] same room of [her] abuser." (*Id.*) The Pre-Charge Inquiry Form also states that she "was informed to drop off all work related documents to the health center my abuser was at[,]" and that she was also "informed to report to the same location of my abuser or use time to take off from work." (*Id.* at 24.) In the Court's view, these events collectively should have led the

PHMC Defendants to believe that a hostile work environment claim was possible. *See Schouten*, 58 F. Supp. 2d at 617.

Accordingly, the Court declines to dismiss Count III at this time.

### 3. *Count VI*

Individual PHMC Defendants, Walker-Baban and Arrieta, move to dismiss Rippy's claim against them for aiding and abetting in violation of PHRA § 955(e), arguing that the TAC contains "no facts suggesting [that] these defendants are supervisors capable of aiding and abetting discriminatory practices." (*See* ECF No. 42-1 at 18.) Rippy asserts in response that "Arrieta and Walker-Baban failed to adequately train individuals who worked in close proximity with their employees and those same individuals failed to investigate or take appropriate remedial action." (ECF No. 50 at 14.) According to Rippy, this alleged "deliberate indifference establishes personal involvement or actual knowledge of and acquiescence in Defendant Gerard's conduct." (*Id.*) The Court agrees with the PHMC Defendants that Rippy has failed to state a cognizable claim against them under PHRA § 955(e).

Title VII creates a cause of action against an employer for workplace discrimination; however, this cause of action does not extend to the employer's employees in their individual capacities. *See Hill v. Kutztown*, 455 F.3d 225, 246 n.29 (3d Cir. 2006). Nonetheless, the PHRA does provide for individual liability. *See Dici v. Pennsylvania*, 91 F.3d 542, 552-53 (3d Cir. 1996). Such liability is expressly limited to persons who:

> [A]*id, abet, incite, compel or coerce* the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice.

43 Pa. Cons. Stat. § 955(e) (emphasis added).

The Court finds that Rippy fails to allege in detail how Walker-Baban and Arrieta individually violated PHRA § 955(e). Rippy has not plead any facts regarding the roles these individuals played in relationship to Gerard's discriminatory conduct. In other words, Rippy has alleged no facts in her TAC suggesting that these individuals "aided, abetted, incited, compelled, or coerced" Gerard to discriminate against and sexually harass her.

Accordingly, the Court will dismiss *without prejudice* Rippy's PHRA § 955(e) claim.

### 4. *Counts XI and XII*

The PHMC Defendants move to dismiss Rippy's 42 U.S.C. § 1981 claims against them for race discrimination and retaliation as "she has not pled sufficient facts from which a factfinder could infer that [the PHMC] Defendants discriminated or retaliated against [Rippy] on the basis of her race, or otherwise authorized, directed, or participated in Gerard's alleged course of conduct." (ECF No. 42-1 at 22.) The Court agrees.

A claim under Section 1981 generally requires the same elements of proof as an employment discrimination claim under Title VII, but "is limited to the issues of racial discrimination in the making and enforcing of contracts." *Anjelino*, 200 F.3d at 99. Section 1981 states:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.

The Third Circuit has found individual liability under Section 1981 where "individuals are personally involved in the discrimination against [plaintiff], and [where] they intentionally

caused the [employer] to infringe on [plaintiff's] Section 1981 rights, or [where] they authorized, directed, or participated in the alleged discriminatory conduct." *Al-Khazraji v. St. Francis Coll*., 784 F.2d 505, 518 (3d Cir. 1986); *see also Shaw v. Temple Univ*., 357 F. Supp. 3d 461, 474 (E.D. Pa. 2019) (The "Third Circuit has found individual liability under Section 1981 'when [the defendants] intentionally caused an infringement of rights protected by Section 1981, regardless of whether the [employer] may also be held liable.'" (quoting *Cardenas v. Massey*, 269 F.3d 251, 268 (3d Cir. 2011))). Lastly, "[s]imply stating that one endured race discrimination without presenting allegations suggestive of such conduct does not meet [Third Circuit] pleading standards." *Funayama v. Nichia Am. Corp.*, No. 08-5599, 2009 WL 1437656, at *5 (E.D. Pa. May 21, 2009).

Rippy's TAC is devoid of any factual averments plausibly alleging that the PHMC Defendants discriminated against Rippy on the basis of her race or that any of their actions were motivated by racial animus. Specifically as to Defendants Gaymon, Walker-Baban, and Arrieta, the Court finds that there are no allegations in the TAC to suggest that these Defendants engaged in any intentional infringement of Rippy's rights under Section 1981. The Court recognizes that Rippy alleges she was singled out and targeted for selective enforcement and scrutiny after she complained of sexual harassment by Gerard (*see* TAC ¶¶ 140-145); however, Rippy does not suggest that this alleged retaliation was racially motivated in any way. Moreover, Rippy fails to allege facts that would indicate that PHMC and/or any of its employees, including Gaymon, Walker-Baban, and Arrieta, authorized or participated in the alleged race discrimination perpetrated by Gerard. *See Deans v. Kennedy House, Inc*., 998 F. Supp. 2d 393, 414 (E.D. Pa. 2014) (noting that a union could be liable under Section 1981 where it instigated or actively supported an employer's discriminatory actions).

Accordingly, the Court dismisses *without prejudice* Rippy's 42 U.S.C. § 1981 claims against the PHMC Defendants for race discrimination and retaliation.

### 5. *Counts XIII and XIV*

The City moves to dismiss Rippy's 42 U.S.C. § 1983 claims against it for discrimination and retaliation as she fails "to identify any policy or custom of the City of Philadelphia that was the moving force behind a constitutional violation." (ECF No. 48 at 7.) The Court agrees with the City.

The City asserts that Rippy's only substantive allegations concerning the City under *Monell* include "that the City implemented policies and procedures regarding who was required to attend City sexual harassment and discrimination trainings[,]" and that Gerard "was not permitted or required to attend the City's sexual harassment and discrimination training." (*Id.* at 7-8 (citing TAC ¶¶ 41-42, 67-68).) To this end, the City argues that even if it did preclude Gerard from attending the training, Rippy "has still failed to sufficiently plead that the City had a policy or custom that was the moving force behind a constitutional violation." (*Id.* at 8.) Rippy argues in response that "City is liable under Section 1983 for supervisory liability because its . . . employees failed to adequately train individuals who worked in close proximity with [] City's employees and/or because those same individuals failed to investigate and failed to take appropriate remedial action." (ECF No. 49 at 10.)

The Supreme Court in *Monell* held that a "municipality may be held liable under 42 U.S.C. § 1983 for a constitutional injury directly result[ing] from a municipality's policy, custom, or practice." *Hunter v. Prisbe*, 984 F. Supp. 2d 345, 353 (M.D. Pa. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 695 (1978)). "To establish municipal liability under 42 U.S.C. § 1983, a civil rights plaintiff must demonstrate the municipality itself, throughout the

implementation of a policy or a custom, caused the underlying constitutional violation." *Stevens v. Borough*, No. 11-7216, 2013 WL 2292047, at *2 (E.D. Pa. May 23, 2013) (quoting *Monell*, 436 U.S. at 690-91). "A municipality is not liable under Section 1983 unless the policy or custom was the 'moving force' underlying the constitutional violation." *Stevens*, 2013 WL 2292047, at *3 (quoting *Kelly v. Borough of Carlisle*, 622 F.3d 248, 263 (3d Cir. 2010)). Pursuant to *Monell* a civil rights plaintiff must "plead the existence of: (1) a policy or lack thereof; (2) a policy maker that effectuated said policy; and (3) a constitutional violation whose 'moving force' was the policy in question." *Stevens*, 2013 WL 2292047, at *3 (quoting *Monell*, 436 U.S. at 694). "Under *Monell*, a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007).

The Court finds that Rippy fails to plead a City custom or policy that was the moving force behind a constitutional violation. Rippy alleges that the City provided sexual harassment and discrimination policies and guidelines to PHMC. (TAC ¶ 40.) Rippy also alleges that City employees conducted sexual harassment and discrimination trainings for PHMC employees, but that an unidentified employee of City was responsible for implementing the policy that federal government employees were not required to attend these trainings. (*Id.* ¶¶ 40-42.) Rippy also asserts that City "knew that [] Gerard did not attend the sexual harassment and discrimination trainings. Nor did they require him to attend any sexual harassment or discrimination trainings." (*Id.* ¶¶ 67-68.) In the Court's view, these allegations do not support an inference that the City is the "final decision-maker," or that the City "'either deliberately chose not to pursue . . . alternatives' known to prevent the constitutional violations, 'or acquiesced in a long-standing policy or custom of inaction in this regard.'" *Edwards v. Northampton Cty.*, No. 12-5323, 2016

WL 7654661, at *7 (E.D. Pa. 2016) (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996)). Rippy alleges that Gerard touched her breast inappropriately in the presence of three witnesses. (TAC ¶¶ 72-77, noting "Ms. Alston, Dorthoy Baptiste, and Desare Bradham all witnessed this incident.") Yet, Rippy fails to allege that these three witnesses had supervisory authority and allowed Gerard to act contrary to the established policy. Rippy further fails to plausibly allege that the City proceeded with a blind eye as to Gerard's ignorance of its discrimination policies/trainings, or that City supervisors were aware that Gerard did not attend the trainings yet allowed him to continue inappropriate behavior toward Rippy. Because Rippy does not identify a municipal official with the power to make policy who could potentially be responsible for a violative custom or policy, the City cannot be held liable for the violative actions of one CDC employee or any PHMC employees who failed to follow established policies.

Accordingly, the Court will dismiss *with prejudice* Counts XIII and XIV.

### 6. *Punitive Damages*

The PHMC Defendants also request dismissal of Rippy's prayer for punitive damages. (*See* TAC at 3; ECF No. 42-1 at 22-23.) In employment cases, punitive damages are appropriate when an employer acts with "'malice' or 'reckless indifference' . . . to the employer's knowledge that it may be acting in violation of federal law." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534-36 (1999). The PHMC Defendants argue that the Court should dismiss Rippy's prayer for punitive damages because the TAC "does not set forth any facts that would suggest that PHMC or its employees 'acted with malice or reckless indifference' to Plaintiff's federal rights." (ECF No. 42-1 at 23.)

The Court will decline to strike the prayer for punitive damages at this early stage in the litigation. Rippy alleges that the PHMC Defendants failed to investigate and take appropriate remedial action when Rippy reported Gerard's sexual harassment and thereafter retaliated against her. (*See* ECF No. 50 at 20; TAC ¶¶ 93, 135, 141.) On these facts, one could reasonably infer that the PHMC Defendants were at least recklessly indifferent to Rippy's rights.

Accordingly, the Court will deny PHMC Defendants' Motion as to Rippy's prayer for punitive damages.

## IV.     CONCLUSION

For the reasons discussed above, the Court will grant Gerard and the City's respective Motions, and will grant in part and deny in part the PHMC Defendants' Motion. An appropriate Order will follow.

**IT IS SO ORDERED.**

**BY THE COURT:**

/s/ Judge John Milton Younge

**Judge John Milton Younge**